ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Matthew L. Venezia (State Bar No. 313812)
   mvenezia@egcfirm.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
George B. A. Laiolo (State Bar No. 329850)
   glaiolo@egcfirm.com
44 Montgomery Street, Suite 1280
San Francisco, California 94104
Telephone: (415) 391-7100
Facsimile: (415) 391-7198

Attorneys for Plaintiff Leonard Lawson

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| LEONARD LAWSON,<br><br>                    Plaintiff,<br><br>          vs.<br><br>DOORDASH, INC.,<br><br>                    Defendant. | Case No. 3:22-cv-04059-SK<br><br>Assigned Judge:  Honorable Sallie Kim<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT;**<br><br>**(2) VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW;**<br><br>**(3) VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW; AND**<br><br>**(4) BREACH OF CONTRACT**<br><br>Action Filed:  July 11, 2022 |

Plaintiff Leonard Lawson ("Plaintiff") brings this Complaint individually, and on behalf of all persons similarly situated, against Defendant DoorDash, Inc. ("DoorDash"), and alleges as follows:

**<u>INTRODUCTION</u>**

1. DoorDash has risen to prominence as the market leader for restaurant delivery services. Today, customers can order food for delivery (in addition to various other items) from hundreds of thousands of participating restaurants and stores—referred to by DoorDash as "merchants."

2. More than 25 million people have signed up for DoorDash's services, and in 2021, DoorDash reported earning in excess of $4.8 billion in revenue, on a gross order volume nearing $50 billion. DoorDash has obtained significant private equity investment, and in the latest round of financing, achieved a valuation of $16 billion.

3. This growth was largely fueled by the promise of free delivery. Consumers, now more than ever, choose to have meals and other items delivered by DoorDash, because DoorDash purports to provide the service for free. In other words, why drive to a restaurant to pick up dinner when DoorDash represents that it will bring your food to you at no charge?

4. This sales pitch has caused consumers to flock to the DoorDash platform, and upon information and belief, DoorDash chose to emphasize the claim that it does not charge delivery fees because it understood that consumers abhor delivery fees, and in many cases will walk away from a purchase before agreeing to pay for delivery.

5. However, DoorDash's promise of free delivery was a lie. While DoorDash regularly advertises that it charges a "$0 delivery fee," and DoorDash's order confirmation page confirms a $0.00 delivery fee, "service fees" are hidden until the point of sale, and further delivery fees are in fact hidden in the purchase price for individual items ordered on DoorDash.[1]

6. Products on DoorDash are routinely marked up from the prices charged by

---

[1] Even where DoorDash admits delivery fees are being charged on the order confirmation page, additional delivery fees are still hidden from the customers, in the same manner explained below.

SECOND AMENDED COMPLAINT

merchants to customers who walk into the physical locations. As an example, a customer walking into the California Pizza Kitchen on Santa Monica Boulevard in Los Angeles, California would be charged $17.99 for their pepperoni pizza, whereas a customer ordering the exact same pizza for delivery on DoorDash would be charged $20.70, before any delivery fee, or the disclosed fees and estimated tax. DoorDash never conspicuously discloses this practice.



7. Similarly, for many merchants, DoorDash charges customers that select the delivery option more for the same products than customers who select the pickup option. For example, a customer that orders a fish taco from Tacos Super Gallito on Santa Monica Boulevard in Los Angeles, California would be charged $3.89 for the taco, before any delivery fee, or the

- 2 -
SECOND AMENDED COMPLAINT

disclosed fees and estimated tax, whereas a customer choosing to pick up his order would be charged $3.17 for the exact same taco. DoorDash never discloses this practice.



8.    Through these practices, upon information and belief, DoorDash has concealed billions of dollars in delivery fees from customers, and induced millions of customers to sign up for and place orders through the DoorDash platform, that otherwise would not have done so.

9.    These unlawful advertising practices have brought scrutiny from local governments, e.g., The City of Chicago filed claims against DoorDash based upon DoorDash's deception concerning the true costs of its delivery service. Those claims have already proceeded past a motion to dismiss.

**PARTIES**

10. Plaintiff Leonard Lawson is an individual residing in Kansas City, Missouri.

11. Plaintiff is informed and believes, and thereon alleges, that defendant DoorDash is a Delaware corporation with its principal place of business in San Francisco, California.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because the amount in controversy well exceeds $5 million and Plaintiff represents a putative nationwide class that, upon information and belief, includes well in excess of 100 members and members from each of the other 49 states besides California.

13. Venue in this district is proper pursuant to 28 U.S.C. § 1391 because DoorDash is headquartered in this district and, upon information and belief, established the false advertising practices at issue in this case, and directs those practices nationwide, from within the district. Thus, a substantial part of the events or omissions that gave rise to the claims asserted herein occurred within this district. DoorDash also targets customers with its false advertising and makes substantial sales within the district.

14. This Court has personal jurisdiction over DoorDash because DoorDash maintains its principal place of business in California. This Court also has personal jurisdiction over DoorDash because DoorDash regularly markets and sells its services, including the services at issue in this case, to customers in California, and specifically in this district.

**GENERAL ALLEGATIONS**

**A.      DoorDash becomes market leader providing restaurant delivery services.**

15. Founded in 2013, DoorDash operates an online food ordering and delivery service, which has in recent years been expanded to offer delivery from additional types of stores other than restaurants, like grocery and convenience stores.

16. Hundreds of thousands of merchants have signed up for DoorDash, and using the DoorDash platform, customers can place orders at those merchants, with DoorDash then coordinating delivery of the orders. These orders can be placed on DoorDash's website, or through DoorDash's app.

17. In exchange for this service, DoorDash discloses that customers are charged a service fee, and in certain instances, a delivery fee. However, as discussed in more detail below, the delivery fees advertised by DoorDash and quoted to the customer in the order confirmation page deliberately conceal the true cost of delivery when using DoorDash.

18. DoorDash has grown to be the market leader in the food delivery space—its market share estimated by McKenzie & Company to have reached 53% of the United States market in 2021 (followed by Uber Eats at 26%, GrubHub at 12%, and Postmates at 5%).

19. As noted above, DoorDash reports that more than 25 million customers have signed up for its service. This growth is also reflected in DoorDash's revenues, which reached in excess of $4.8 billion for just 2021. Upon information and belief, the total gross order volume on DoorDash for the same year neared $50 billion.

**B.** **To achieve this success, DoorDash hides the true delivery costs from its customers, touting free delivery.**

20. DoorDash's website and app prominently advertise a low delivery fee in an attempt to convince customers to place delivery orders on their platform. An example is provided below.



21. On many orders, DoorDash represents that there is a "$0 delivery fee." This

representation is made to customers when selecting a restaurant, e.g., representations that a restaurant offers a "$0 delivery fee" or "$0 delivery fee over $[certain amount of money]." This representation is repeated on the order confirmation page, where DoorDash discloses the "Delivery Fee" prior to a customer submitting their order.

22. DoorDash's promise of free delivery is simply not true. DoorDash conceals the true delivery fees in several material ways.

23. First, under the "Fees & Estimated Tax" category, DoorDash charges customers what it refers to as a "Service Fee." DoorDash represents that this fee "helps us operate DoorDash[,]" but of course, the service being offered by DoorDash is delivery.

24. This service fee is concealed from customers until the point of sale. Customers select a restaurant and what they want to eat under the pretense that delivery will be free, only to be confronted with a bait-and-switch when it is time to complete their order, with DoorDash then finally disclosing the service fee.

25. At this point customers have already invested time and energy into the transaction. Because the product being purchased is generally food, customers have planned their meal before the service fee is disclosed, creating momentum towards completing the order, even if customers are reluctant to pay the service fee.

26. Further, in the background—undisclosed to customers—DoorDash charges its merchants a commission of 15%–30% of the total purchase price for each order. DoorDash represented in an announcement for its participating merchants that this commission is used to cover several operating costs associated with providing its delivery services, e.g., dasher pay, background checks, customer service, insurance, and operation of the DoorDash app and website.

27. This 15%–30% commission is not in fact generally borne by the restaurants, but is instead passed along to DoorDash's customers in the form of an upcharge imposed by DoorDash for items ordered through its app or website.

28. That is, DoorDash imposes an undisclosed upcharge for items ordered through its platform such that prices for the exact same items are higher on DoorDash than if a customer bought those items from a restaurant or store. As explained above using the California Pizza

Kitchen example, the same pepperoni pizza costs more on DoorDash than when purchased directly through the restaurant. This practice is widely employed by DoorDash throughout its hundreds of thousands of restaurant and store partners. It is thus false and misleading to suggest products purchased on DoorDash have no (or a certain disclosed) delivery fee—customers pay higher prices for the items delivered than they would if they went into the restaurant or store.

29. Upon information and belief, the viability of DoorDash's platform relies on DoorDash's passing along of the true costs of delivery to its customers. In other words, merchants could not afford to participate in DoorDash's platform if they were required to shoulder the burden of DoorDash's 15%–30% commission themselves.

30. There is of course another option as to how DoorDash could structure its business. If DoorDash intends to pass along the true costs of delivery to its customers, as it does, DoorDash could not charge its merchants a commission, but instead charge customers the same 15%–30% as a *disclosed* delivery fee. This would inform DoorDash's customers as to the true cost of delivery when placing an order through DoorDash, and allow DoorDash customers to make an educated decision as to whether they should order through DoorDash. Upon information and belief, DoorDash has not structured its business in this way because DoorDash knows that if it disclosed the true costs of delivery to its customers, DoorDash would sign up significantly less users and make significantly less sales through its app and website.

31. To the extent DoorDash argues these upcharges are adequately disclosed in its terms of service, the argument must fail. As a threshold issue, DoorDash customers do not agree to DoorDash's Terms of Service when signing up for DoorDash, because DoorDash does not conspicuously place the link to its Terms of Service where customers are likely to see it. The link to DoorDash's terms of service appears at the bottom of its website, underneath the "Sign Up" button, and a customer can sign up for DoorDash's service and place orders without ever seeing a link to DoorDash's Terms of Service.

32. Even if a customer were to locate and review DoorDash's Terms of Service, the purported disclosure is inconspicuously located within Section 11(a), not emphasized in any way, and confusingly worded as follows:

> [T]he prices for menu or other items displayed through the Services may differ from the prices offered or published by Merchants for the same menu or other items and/or from prices available at third-party websites and that such prices may not be the lowest prices at which the menu or other items are sold[.]

33. It is not simply the case that prices "may differ." DoorDash employs a consistent practice of increasing the price of items purchased through its platform vis-à-vis prices available directly through the merchants. DoorDash does not, for instance, regularly lower prices, and even this purported disclosure is confusingly worded to avoid admitting DoorDash's consistent practice of imposing upcharges on its customers.

34. Moreover, for certain restaurants and stores, DoorDash charges customers that select the delivery option a higher price for their items than customers that select the pickup option. As illustrated using the Tacos Super Gallito example above, DoorDash charges a higher price for the exact same fish taco when a customer selects the delivery option, and does not disclose that upcharge as part of the delivery fee.

35. DoorDash does not disclose this practice anywhere—customers, relying on DoorDash's calculation of the delivery fee to be accurate have no reason to "comparison shop" by clicking on the pickup button to discover the hidden upcharge.

36. While DoorDash regularly advertises and induces customers to use its platform by offering free delivery, DoorDash's practice of concealing the true delivery fees is no less confusing when considering orders that have a disclosed delivery fee. For example, if a customer agrees to pay a $3.99 delivery fee, but DoorDash imposes an undisclosed upcharge on the individual items, that is not included within the quoted delivery fee, the customer still pays more for delivery than they bargained for.

37. DoorDash's practice of disclosing the "Delivery Fee" and "Fees & Estimated Tax" in its order confirmation page renders the above practices even more misleading. Upon information and belief, DoorDash customers believe that any costs associated with using the DoorDash platform and delivery would be disclosed within these itemized categories. They are in fact not. And, as explained above, concealing service fees until the point of sale while promising free delivery is in and of itself false and misleading advertising, akin to a bait-and-switch.

SECOND AMENDED COMPLAINT

38. Using these tactics, DoorDash has deceived many millions of DoorDash customers into paying more in delivery fees than they agreed to or believed they were paying. Had these customers known the true delivery fees, a significant percentage of the customers would have simply not ordered delivery.

**C.** **A consumer survey confirms the deceptive nature of DoorDash's advertising.**

39. Plaintiff's counsel commissioned a double-blind consumer survey "to determine the extent to which, if at all, DoorDash's advertising has led current and future likely DoorDash customers to believe DoorDash offers free delivery services[.]"

40. This survey was conducted by experienced survey professionals, consistent with good practices for conducting a consumer survey to test for false advertising.

41. This survey proceeded by exposing current and likely future DoorDash customers to a theoretical DoorDash purchase, including the standard "$0 delivery fee" advertisements. Respondents were then asked questions "gauging respondents' perceptions of DoorDash's delivery fee practices[.]"

42. The survey results demonstrated that DoorDash's advertising results in significant consumer deception—68.5% of respondents "were misinformed about DoorDash's delivery fee practices across at least one of the two key study measures[,]" and "a material proportion of relevant consumers do not understand that an upcharge is added to product prices within the DoorDash app." Specifically, the survey offered the following conclusions:

**Conclusions**

50. The results of this study of 394 likely purchasers of DoorDash delivery services show that a material proportion of relevant respondents are misinformed as to DoorDash's delivery fee practices. Specifically:

- Over two-thirds of study respondents—68.5 percent—were misinformed about DoorDash's delivery fee practices across at least one of the two key study measures;

- 48.0 percent of respondents indicated a belief that DoorDash had **not** charged a delivery fee on the order that they had reviewed; and

- 40.9 percent of respondents indicated a belief that an item listed at a price of $15.99 in the DoorDash app would also sell for $15.99 when ordered in-restaurant for take-out, even though that item is offered at a price of $12.99 in-restaurant.

**D.** **Believing he would receive free delivery, Plaintiff signs up for a DoorDash account and orders meals for delivery from DoorDash.**

43. Plaintiff was attracted to the DoorDash platform by its promise of free delivery, and signed up for an account in April of 2022.

44. Plaintiff signed up for an account using his laptop, and at no time during the sign up process did Plaintiff see any link to DoorDash's Terms of Service, nor any language suggesting that by signing up for DoorDash, Plaintiff was agreeing to any particular Terms of Service.

45. Plaintiff made two separate delivery orders through DoorDash, and was motivated to place each delivery order, as opposed to ordering directly from the restaurants, because DoorDash represented that Plaintiff would be charged a "$0 delivery fee".

46. However, the representation that Plaintiff would be charged a "$0 delivery fee" was false and misleading.

47. On April 12, 2022, Plaintiff placed a delivery order from Ma & Pa's Kettle in Kansas City, Missouri. Plaintiff ordered a roast beef dinner and a soda, and DoorDash represented to Plaintiff that the order included no delivery fee. Plaintiff was charged $9.29 for the roast beef dinner, as pictured below.

**Order Details**

| | |
|---|---|
| 1× Soda<br>Large, Mugs Root Beer | $2.69 |
| 1× Roast Beef<br>Mashed Potatoes & Gravy, Applesauce | $9.29 |
| Subtotal | $11.98 |
| Delivery Fee | ~~$0.99~~ $0.00 |
| Service Fee ⓘ | $3.00 |
| Tax ⓘ | $0.92 |
| Dasher Tip | $4.50 |
| **Total** | **$20.40** |

48. However, had Plaintiff made the same order for takeout, upon information and belief, Plaintiff would have been charged $8.59 for the exact same roast beef dinner, with no service fee.

49. On May 4, 2022, Plaintiff placed an order from Wingstop. Plaintiff ordered the 15-

piece meal for two, and DoorDash represented to Plaintiff that the order included no delivery fee. The price for the food was represented to be $28.79, as pictured below.

**Order Details**

| 1× 15pc Meal for 2 Classic | $28.79 |
|---|---|

| Subtotal | $28.79 |
|---|---|
| Delivery Fee | ~~$3.99~~ $0.00 |
| Service Fee ⓘ | $4.32 |
| Tax ⓘ | $2.44 |
| Dasher Tip | $5.50 |
| **Total** | **$41.05** |

50. DoorDash imposed an undisclosed upcharge on these items, which would have cost $24.99 had Plaintiff ordered directly from Wingstop and picked the items up, with no service fee.



51. But for DoorDash's misrepresentation that delivery was free, Plaintiff would not have placed the above-described delivery orders through DoorDash.

**E.     Plaintiff opts out of the DoorDash's Arbitration Agreement.**

52. Plaintiff did not agree to DoorDash's Terms of Service at any time. Nonetheless, to

SECOND AMENDED COMPLAINT

avoid any argument that this dispute should be arbitrated, pursuant to Section 12(h) of DoorDash's Terms of Service, within 30 days of Plaintiff's original sign up for DoorDash, Plaintiff opted out of DoorDash's Arbitration Agreement. Plaintiff complied with all requirements of that Section in order to validly opt out of DoorDash's Arbitration Agreement.

### F. DoorDash ignores Plaintiff's CLRA Notices.

53. On July 12, 2022, Plaintiff sent DoorDash a demand letter, pursuant to Section 1782 of California's Civil Code, advising DoorDash of the allegations made in the Complaint, ECF No. 1, and demanding DoorDash "correct, repair, replace, or otherwise rectify the false advertising practices detailed therein and compensate Plaintiff and the putative class members for their damages. Specifically, DoorDash must (1) refund any product upcharges imposed upon the putative class members, and (2) cease and desists from representing that DoorDash offers a '$0 delivery fee' (or other disclosed delivery fee) that fails to include the upcharge from the merchants' in-store prices."

54. On August 12, 2022, Plaintiff sent DoorDash a supplemental demand letter, pursuant to Section 1782 of California's Civil Code, making clear that Plaintiff's claims include the service fees which are concealed by DoorDash until the point of sale, and demanding that DoorDash "(1) refund any service fees charged to the putative class members, and (2) cease and desists from representing that DoorDash offers a '$0 delivery fee' (or other disclosed delivery fee) so long as DoorDash imposes its service fee; disclosed for the first time at the point of sale."

55. These letters further informed DoorDash that should it "fail to do so within 30 days of its receipt of this letter, complying with each requirement of section 1782 of California's Civil Code, including subsections (b) and (c)," Plaintiff would seek attorneys' fees and all available damages on his CLRA claim, both on behalf of himself and the putative class.

56. These letters were sent to DoorDash by certified mail, return receipt requested, on July 12, 2022, and August 12, 2022, respectively. The letters were received by DoorDash on July 14, 2022, and August 12, 2022, respectively.

57. DoorDash did not respond to these CLRA demand letters. Nor did DoorDash adequately resolve the complaints made therein.

- 12 -

SECOND AMENDED COMPLAINT

58. On December 14, 2022, Plaintiff sent DoorDash a supplemental demand letter, pursuant to Section 1782 of California's Civil Code, advising DoorDash that Plaintiff intends to seek certification of an additional class of DoorDash customers, that signed up for DoorDash through the website. The letter reiterated the demands from the previous demand letters on behalf of this new putative class.

59. This letter was sent to DoorDash by certified mail, return receipt requested, and was received by DoorDash by mail on December 16, 2022. (DoorDash also received the letter by e-mail the same day it was sent.) DoorDash did not respond to this letter. Nor did DoorDash adequately resolve the complaints made therein.

## **CLASS ACTION ALLEGATIONS**

60. Plaintiff brings this action on behalf of himself and two putative classes of DoorDash customers who are similarly situated under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

61. The Opt-Out Class seeks damages, restitution, and injunctive relief, and is defined as follows:

- All persons or entities in the United States that have placed a delivery order through DoorDash and been charged a service fee and/or a higher price for the purchased items than they would have been charged if the customer purchased the items directly from the merchant, or through DoorDash's pickup option. This class is limited to those persons or entities that have opted out of DoorDash's Arbitration Agreement.

62. The Website Class seeks damages, restitution, and injunctive relief, and is defined as follows:

- All persons or entities in the United States that have placed a delivery order through DoorDash and been charged a service fee and/or a higher price for the purchased items than they would have been charged if the customer purchased the items directly from the merchant, or through DoorDash's pickup option. This class is limited to those persons who signed up for their DoorDash account using DoorDash's website.

63. Upon information and belief, given that DoorDash's revenue is in the billions of dollars per year, and given that DoorDash reports having in excess of 25 million users, the Opt-Out Class and Website Class consist of well in excess of 100 DoorDash users located throughout the United States. The exact number and identities of the members of the Opt-Out Class and

Website Class are known or readily ascertainable by DoorDash, and the number of persons who fall within the definition of the Opt-Out Class and Website Class are so numerous and geographically dispersed as to make joinder of all members of the Opt-Out Class and Website Class in their individual capacity impracticable, inefficient, and unmanageable so as to effectively deny each putative member of the Opt-Out Class and Website Class his, her, or their right to obtain relief based on the claims and allegations made in this Complaint.

64. There are common questions of law and fact as to the Opt-Out Class and Website Class , relating to and/or dispositive of the allegations of unlawful and misleading conduct made in the Complaint, and relating to and/or dispositive of the common pattern of alleged injury and harm caused by that unlawful and misleading conduct and sustained by the putative members of the Opt-Out Class and Website Class, including, but not limited to:

- Whether DoorDash's practice of advertising free delivery, while concealing service fees until the point of sale, constitutes false or misleading advertising.

- Whether DoorDash's practice of charging higher prices for the delivery of items than those offered directly by the merchant, or through DoorDash's pickup option, and not including that upcharge in its quoted delivery fee constitutes false or misleading advertising.

- The extent to which DoorDash's Terms of Use can be enforced by DoorDash against members of the Opt-Out Class and Website Class.

- To the extent DoorDash's Terms of Use can be enforced by DoorDash, whether the purported disclosure related to DoorDash's upcharge from the merchants' pricing is sufficient to remedy the false and misleading nature of DoorDash's advertising.

- Whether members of the Opt-Out Class's and Website Class 's damages may be calculated by measuring the amount of the undisclosed upcharge from the prices available directly from the merchants, or through DoorDash's pickup option.

65. The interests of Plaintiff and the Opt-Out Class and Website Class are aligned. Plaintiff seeks to establish that DoorDash is required to refund service fees and undisclosed amounts paid by customers for its delivery services. Should Plaintiff prevail in establishing the same, each of the other members of the Opt-Out Class and Website Class would then be entitled to similar refunds for the damage caused to them by DoorDash's practice of concealing the true delivery costs.

66. The claims of Plaintiff are typical of the claims of the Opt-Out Class and Website

2154041.2                                    - 14 -
SECOND AMENDED COMPLAINT

Class . Plaintiff placed delivery orders for items that were sold at a higher price than if Plaintiff ordered directly from the merchants, was charged a service fee first disclosed at the point of sale, and Plaintiff was deceived into believing he would receive free delivery. Plaintiff further opted out of DoorDash's arbitration agreement, and signed up for a DoorDash account through the website.

67. The Opt-Out Class and Website Class are represented by counsel who are competent and experienced in the prosecution and defense of similar claims and litigation, including class actions filed, prosecuted, defended, or litigated under California and federal law, in federal courts, in connection with claims and certification of consumer classes composed of members who reside in California and/or the United States. Counsel has prosecuted and defended many significant cases brought pursuant to California's CLRA, FAL, and UCL.

68. The prosecution of separate actions by individual members of the Opt-Out Class and Website Class would create a risk of inconsistent or varying adjudications.

69. The questions of law and fact common to the members of the Opt-Out Class and Website Class predominate over any questions of law or fact affecting only individual members of the Opt-Out Class and Website Class. The primary claim to be proved in this case is whether DoorDash's concealment of the true costs of delivery account to actionable false advertising, and DoorDash's practices are consistently applied to each individual member of the Opt-Out Class and Website Class. Moreover, questions as to the appropriate method to determine damages can be adjudicated class-wide. These issues predominate over any individual issues, of which there appear to be none.

70. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Prosecution as a class action will eliminate the need for repetitious litigation—if it were even feasible for members of the Opt-Out Class and Website Class to proceed individually.

71. The amount of potential damages for each member of the Opt-Out Class and Website Class is small enough that no legal recourse can realistically be obtained by members of

the Opt-Out Class and Website Class without proceeding as a class action. Thus, members of the Opt-Out Class and Website Class have no cognizable interest in individually litigating and controlling the claims asserted herein.

72. Plaintiff is aware of one similar case filed against DoorDash with a putative class that may overlap with the Opt-Out Class and Website Class—*Schwartz v. DoorDash, Inc.*, Case No. 4:22-cv-00250-YGR in the Northern District of California. However, Plaintiff understands that the named plaintiffs in *Schwartz* did not opt out of DoorDash's Terms of Service nor sign up using the website, and there is a motion pending seeking to compel arbitration of the claims in *Schwartz* on an individual basis.

73. California is a proper and desirable forum for the claims against DoorDash to be litigated. DoorDash is based in California, and California's CLRA, FAL, and UCL provide remedies to each member of the Opt-Out Class and Website Class. As to those members of the Opt-Out Class and Website Class residing outside California, California's CLRA, FAL, and UCL provide remedies consistent with that which are available in the members' home states.

74. The Opt-Out Class and Website Class are readily definable by review of sales records and opt out records that should exist in the files of DoorDash. Moreover, DoorDash should have records of the e-mail addresses and addresses of customers that have purchased items through DoorDash such that providing notice to the Opt-Out Class and Website Class will be practicable. Thus, there does not exist any significant likely difficulties in managing the claims as a class action.

## FIRST CAUSE OF ACTION

**(Violation of California's Consumer Legal Remedies Act [Cal. Civ. Code § 1750 et seq.])**

75. Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth in paragraphs 1 through 67 above.

76. DoorDash has committed unlawful acts as defined by California Civil Code § 1770, by engaging in the false and misleading advertising described above, wherein DoorDash hides the true cost of delivery associated with placing delivery orders on its platform.

77. Plaintiff and the members of the Opt-Out Class and Website Class relied on

2154041.2

-16-

SECOND AMENDED COMPLAINT

DoorDash's representation as to the amount of delivery fees when deciding to place their delivery orders through DoorDash.

78. Plaintiff and each member of the Opt-Out Class and Website Class suffered an injury as a direct and proximate result of DoorDash's practice of concealing the true delivery costs associated with ordering through its platform; i.e., being charged delivery fees that they did not agree to be charged.

79. Unless enjoined, DoorDash will continue to engage in false and misleading advertising by concealing the true delivery costs associated with placing an order for delivery on its platform.

80. Upon information and belief, the above-described operations of DoorDash occur in California, where it is headquartered. When any customer purchases an item using DoorDash, they access a website or app published from California and send money into California in exchange for the item. Moreover, upon information and belief, a significant percentage of DoorDash's sales and deliveries occur within California.

81. Plaintiff and the members of the Opt-Out Class and Website Class are without an adequate remedy at law. DoorDash's false and misleading advertising is ongoing and will continue absent injunctive relief, causing continued economic and intangible harms to customers.

## SECOND CAUSE OF ACTION

**(Violation of California's False Advertising Law [Cal. Bus. & Prof. Code § 17500 et seq.)**

82. Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth in paragraphs 1 through 74 above.

83. DoorDash has engaged in false and misleading advertising, by engaging in the practices described above, wherein DoorDash hides the true cost of delivery associated with placing delivery orders on its platform.

84. Plaintiff and the members of the Opt-Out Class and Website Class relied on DoorDash's representation as to the amount of delivery fees when deciding to place their delivery orders through DoorDash.

85. Plaintiff and each member of the Opt-Out Class and Website Class suffered an

injury as a direct and proximate result of DoorDash's practice of concealing the true delivery costs associated with ordering through its platform; i.e., being charged delivery fees that they did not agree to be charged.

86. Unless enjoined, DoorDash will continue to engage in false and misleading advertising by concealing the true delivery costs associated with placing an order for delivery on its platform.

87. Upon information and belief, the above-described operations of DoorDash occur in California, where it is headquartered. When any customer purchases an item using DoorDash, they access a website or app published from California and send money into California in exchange for the item. Moreover, upon information and belief, a significant percentage of DoorDash's sales and deliveries occur within California.

88. Plaintiff and the members of the Opt-Out Class and Website Class are without an adequate remedy at law. DoorDash's false and misleading advertising is ongoing and will continue absent injunctive relief, causing continued economic and intangible harms to customers.

### **THIRD CAUSE OF ACTION**

**(Violation of California's Unfair Competition Law [Cal. Bus. & Prof. Code § 17200 et seq.])**

89. Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth in paragraphs 1 through 81 above.

90. DoorDash has committed acts of unfair competition, as defined by California Business and Professions Code § 17200, by engaging in the unlawful practices described above. Without limitation, DoorDash violates the CLRA's prohibition against misleading advertising and California's FAL by concealing the true cost of delivery associated with placing a delivery order through the DoorDash platform. DoorDash's false advertising also violates the laws of each state where members of the Opt-Out Class and Website Class reside.

91. While California's unfair competition law does not so require, DoorDash's practices are in fact anticompetitive in the classic sense. DoorDash unfairly competes for sales with other delivery services and brick and mortar business.

92. Plaintiff and the members of the Opt-Out Class and Website Class relied on

DoorDash's representation as to the amount of delivery fees when deciding to place their delivery orders through DoorDash.

93. Plaintiff and each member of the Opt-Out Class and Website Class suffered an injury as a direct and proximate result of DoorDash's practice of concealing the true delivery costs associated with ordering through its platform; i.e., being charged delivery fees that they did not agree to be charged.

94. Upon information and belief, the above-described operations of DoorDash occur in California, where it is headquartered. When any customer purchases an item using DoorDash, they access a website or app published from California and send money into California in exchange for the item. Moreover, upon information and belief, a significant percentage of DoorDash's sales and deliveries occur within California.

95. Plaintiff and the members of the Opt-Out Class and Website Class are without an adequate remedy at law. DoorDash's false and misleading advertising is ongoing and will continue absent injunctive relief, causing continued economic and intangible harms to customers.

## FOURTH CAUSE OF ACTION

### (Breach of Contract)

96. Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth in paragraphs 1 through 88 above.

97. Plaintiff and each member of the Opt-Out Class and Website Class entered into contracts with DoorDash when placing orders.

98. A material term of each contract was the amount of the delivery fee, as disclosed by DoorDash in its order confirmation pages.

99. This disclosure was however false and misleading in each instance, because additional delivery fees were hidden in the prices of the individual items, as described above.

100. This imposition of an undisclosed delivery fee is a breach of each purchase contract DoorDash enters into with its customers.

101. Plaintiff and each member of the Opt-Out Class and Website Class suffered damages in the form of the hidden delivery fees.

2154041.2

Case 4:23-cv-00110-BP    Document 37    Filed 01/16/23    Page 20 of 22

- 19 -

SECOND AMENDED COMPLAINT

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff and the putative Opt-Out Class and Website Class pray for relief against DoorDash as follows:

1. For preliminary and permanent injunctions enjoining and restraining DoorDash, its agents, employees, representatives, partners, joint venturers, and/or anyone acting on behalf of, or in concert with DoorDash, from engaging in the above-described false and misleading advertising;

2. For damages and/or equitable restitution consisting of the hidden delivery fees (including service fees) imposed upon Plaintiff and the Opt-Out Class and Website Class , in an amount to be determined by evidence, but in excess of $5 million;

3. For punitive damages in an amount according to proof;

4. For pre-judgment interest on all damages awarded by this Court;

5. For reasonable attorneys' fees and costs of suit incurred herein; and

6. For such other and further relief as the Court deems just and proper.

DATED: January 16, 2023

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
    Matthew L. Venezia
    George B. A. Laiolo

By:     */s/ Matthew L. Venezia*
        Matthew L. Venezia
Attorneys for Plaintiff Leonard Lawson

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: January 16, 2023

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
    Matthew L. Venezia

By: _____*/s/ Matthew L. Venezia*_____
    Matthew L. Venezia
    George B. A. Laiolo
Attorneys for Plaintiff Leonard Lawson

2154041.2

SECOND AMENDED COMPLAINT